morning. My name is Xavier Rosas. I'm the attorney for the petitioner in this matter. I'd like to say two minutes for rebuttal. Just watch the clock. Thank you. Let's begin by saying this case is a little bit of a legal oddity because certain case law came up after the case had been decided. And certain aspects, I don't think the BIA reviewed the cases prior to making a decision in the matter. Most notably, the Altamirano case, the Natalia Ursula Covarrubias case and the Aguilar case came out all after the decision had been made. In fact, I believe the Altamirano case came out one day prior to the decision in this matter. So it's hard to tell from the one sentence BIA decision whether they decided the case on that basis or not. But the fact pattern is very similar in the sense that to the Actus Reis of the case where she was a passenger, the petitioner was a passenger in a vehicle, and there was an alien being smuggled in the vehicle. The birth certificate was not hers or of her children being used to smuggle the alien into the United States. Well, isn't your problem to get over the hurdle that she didn't show any resistance to what was going on? She knew what was going on. It was her car. She gave the car to him. Doesn't that take you out of the other case? Well, Your Honor, I believe it wasn't she gave the car to him specifically to smuggle the alien. I believe the facts of the case were they were sort of sharing the trip duties in the sense that she was going to drive there and he was going to drive back. And if you notice in the decision, she didn't quite acquiesce. She was against the plan. She noted her displeasure to the other participants that she didn't want to participate in the plan. And in fact, she stated at one point that she wanted to get out of the car. But at that point, once you get to the point of entry, I mean, it's virtually impossible not to be noticed if you exit the vehicle while you're in line at the port of entry. So in that sense, she sort of thwarted the own plan of the other two participants by, you know, sort of voicing her displeasure at the time. Well, this is all factual data, is it not, that is up to the IJ to determine? And how can we say that there wasn't substantial evidence to support his conclusion? Well, if you look at the Aguilar case, it says it's a matter of fact. Excuse me, it's a matter of law whether she alien smuggled it or not. So in that sense, we do get the review as to what happened to see if the law was, you know, was broken. And in a second sense, the facts were somewhat disputed because her version of the events were, as she stated to the officer in the testimony, and not exactly as the officer surmised on the I-213. The IJ found her to be credible? Well, the IJ said, I mean, he didn't say she was credible. She didn't say he was. She was incredible. He didn't make an adverse credibility finding. But he did not specifically say it was an adverse credibility finding. And you said that at the time of this hearing before the IJ, the IJ did not have the benefit of our circuit precedent. That's correct. It did not have the benefit of the circuit precedent. So there's been no factual analysis by the IJ of what went on in terms of an affirmative act and her intent in light of our cases. That's correct. In fact, even the BIA, I don't think, I mean, specifically they decided the case one day after. But I doubt that in the one day they reviewed the case and this would have decided. Well, it wasn't cited, was it? No, it wasn't cited in the decision to the BIA. And like I said, the decision came out approximately one day after. So it's doubtful that they even reviewed the case. Perhaps the judge. What would you have us do? Excuse me. Have us do? Well, essentially it's still a legal argument whether she committed alien smuggling in light of the cases. In the other sense, if there's some argument over the facts, you almost have to remand in light of the judge reviewing the case in light of the facts. Because he sort of has to look at the facts now and we'll have to use the term, but within the paradigm of the case law that exists now and see whether she actually alien smuggled. So in that sense, it's sort of a, you know, one or the other at this point. The issue on remand, if we were to do that simply a question of whether the Guzman did some affirmative act, which is the language of our opinion. Is there any requirement of specific intent at issue? Well, I believe in ultramariano they essentially decided the issue on the actus reus on what affirmative step that she concluded to commit the alien smuggling. Specific intent more goes to the mens rea of whether she had capacity to, if it was her belief or her knowledge of trying to further the plan. So in one sense, it's a little bit apples and oranges. But in the one sense, I guess, if the question is whether she was committing alien smuggling, I'd have to say no, either on the knowing component or on the affirmative action component. Because I really don't think she committed any active furtherance of it. In fact, she probably forwarded her own plan by possibly her demeanor at the time at the point of entry. And second of all, because she just, you know, she voiced her at every step of the process. She voiced her sort of the fact that she didn't want to continue with the with the with the smuggling activities. Well, let's suppose she turned the keys. Judge Gould. Counsel. When she they picked up the niece, how far was that from the port of entry? Well, I believe it was in the same city, but they specifically didn't cite where in the city it was in relation to the port of entry. All I know is that this. So if it's her car and Daniel's driving it, but she now knows her niece is in the car with phony documentation. Doesn't she have the power to tell Daniel, don't I don't want you driving my car as part of a smuggling attempt? Well, she doesn't. She doesn't seem to me to fit the common law kind of idea of a mere observer. And she's an interested person. It's her niece. It's not a stranger. She loaned the car to her car. She drove down there. She's in the car as they're coming back. She's not like unconscious, not aware of what they're doing. Why doesn't she have some obligation to do something about it? As far as the car, as you stated, it was a long drive for her. It was merely sort of a bad luck that it was the fact that she had decided to be the one who drove there as opposed to the one who drove back. And she had stated to the officer that her purpose in going to Tijuana was to make sure that her niece was okay, not specifically to make sure that she was going to be smuggled into the United States. And she did state at one point that she did think about sort of getting out of the car with the niece, but at that point she just decided too late. She was already at the port of entry and could no longer, you know, at that point was sort of stuck in between whether she was contained in the plan or not. And you think she wouldn't have had the ability to tell the guy driving, stop driving? I don't want you driving my car further. Well, the problem is that in normal circumstances, yes, but at the port of entry, they're all one lane highways. I mean, you're sort of, once you get in, you're sort of stuck. You can't make a U-turn. In between the niece's house where they picked up the niece and the port of entry. That's the thing. There was nothing in the record that sort of state where they made the decision that they were going to smuggle her in, because the passenger had the brochure certificates in her possession. And in the meantime, they said that they just made a decision to do it, and it doesn't state whether they made a decision while they were eating or while they were on their way back, delivering her to wherever she was staying. Counsel, you're down. Go ahead. I'm sorry. No, no. Go ahead, Judge Gould. Well, I think there's some precedence that may require that the person who commits the affirmative act, you know, has some hope that the venture would succeed. And there's also some precedence that don't like omissions qualifying as an act. But here, because of the fact that it's her niece and she drove down there, I'm having trouble understanding how we could say that substantial evidence doesn't support the conclusion that she was involved in it. Well, in that sense, like I stated earlier, it's still a legal decision whether she committed alien smuggling or not. And it still gets into sort of the funny play between her knowledge of the event and whether there was an omission or not. If her specific knowledge was to go down and visit her niece and not commit an alien smuggling event, it's hard to say that that action in and of itself was part of the plan to smuggle the aliens into the United States. So in that sense, it's a little different. And if you look at the Altamirano case, that petitioner made the conscious decision to allow the person to be in the trunk of the car. The same with Aguilar. She acquiesced into letting the smuggler use the birth certificate of one of her children to come into the United States. Thank you, Counsel. Your time has expired. Thank you. We'll hear from the Governor. May it please the Court. My name is Mark Walters, and I represent the Attorney General of the United States. In this case, I don't think the Court needs to remand for the agency to look at it in light of Altamirano, because the case decision below was entirely consistent with Altamirano, and I don't think it's that close a call. I have a little trouble with that concept. If the legal standard against which the fact-finding is supposed to take place is established after the hearing, aren't we putting ourselves in a position of rationalizing a result when, in fact, the appropriate step would be to go back to the immigration judge and say, here is the standard. Now, make a determination whether or not this person made an affirmative act in support of this and whether she had the intent to do it. The problem I'm having in this particular case is that the IJ did not make any adverse credibility finding, so we have to look at her testimony, and her testimony certainly creates, to me, a factual question of whether she had the intent. And there's a factual question, as Counsel is pointing out, as to when this plan to smuggle the niece across the border took place. So the only ‑‑ I don't know what the affirmative act is that she did. Well, Your Honor, I submit that it doesn't matter when the plan actually occurred. Why not? There's a discrepancy in terms of what she told the inspector at the border when questioned. That may be, but the IJ did not find her to lack credibility. Well, no. He said, even assuming that the story as is your testimony gave, that you would not be ‑‑ that you would be culpable as an alien smuggler here. Yes, but at that time, the perception of the rule was that if you were there and were ‑‑ even if you were just passive, that was enough. That's not what the rule is. No, that's ‑‑ And I don't think the IJ had that in mind when he made his findings. He may not have, except that when you look at the analysis, the IJ went well beyond that. He found that she knew that the niece was in the back of her car when they left Tijuana. She knew that the niece had no lawful right to enter the United States. Yes. She knew that Daniel Ontiveros, the driver, would try to cross the border into the United States when she let him drive her car. What's her affirmative act? She provided the transportation. When? When she provided the transportation from the inception. She went down, according to the IJ's acceptance of her story, she went down to visit the niece. There's no evidence in this record as to when, in relation to her activity, the plan changed. There's her own testimony that she opposed it. So what do we do with that? Why are we sitting here trying to rationalize, instead of sending it back to the IJ and letting the IJ apply the fact-finding rule to the law? Your Honor, I would respectfully disagree that there's no evidence as to when the plan started. It started at the latest in Tijuana when they went out for lunch. And at that point, Ms. Guzman still owned that car. She owned the car throughout. She owned the car. Counsel, I understand. She owned the car throughout. The question is, did she turn over the drivership of the car to Daniel with the intent to facilitate smuggling, or did she, per her testimony, he was going to be the driver back, and as the car's moving along post-lunch, they decide they, the driver and the other woman, decide they want to smuggle the niece across. And Ms. Guzman, according to her account, is opposed to it, but she acquiesced. Your Honor, I think substantial evidence clearly supports that when they left the restaurant at Tijuana with Anna in the car, with no right to enter the U.S., headed for the U.S. border, with Daniel Ontiveros having been given control of the car, that the plan existed. So, yes, she turned over the car knowing what the plan was. No, when did she turn over the car? Well, there's two issues on that, and the I.J. gave her the benefit of the doubt. Right. He said, he went along with her testimony, that she turned it over at the restaurant as they were beginning the trip back. Yes. It makes no difference for the statute whether she turned it over there or whether, as she said to the immigration inspector, that she jumped out at the port of entry and they switched drivers there because she became concerned. It makes no difference. If it did, then I would agree that remand would be appropriate. But if it doesn't make a difference, I would. Why does it not make a difference? If, in fact, she legitimately turned over the car to Daniel, the driver, under a prearranged understanding that she didn't want to drive both ways because it was a long and exhausting drive, and in that sense she turned over the car. Then, thereafter, the plan was hatched and implemented. At that point, she has not done anything in furtherance of that change of plan, has she? Well, she has. She's allowed him to use the car. She has. She's allowed Anna to be in the car. Yes, but, okay. Isn't there enough evidence to establish substantial evidence that she knew of the plan because of the phony birth certificate and the findings that the I.J. actually made? Yes. The findings are supported that she knew Anna didn't have a right to come to the U.S. She knew her friend was giving Anna a phony birth certificate. She knew Daniel Ontiveros was headed for the border, and she gave him the keys. And that's all that's required. Even under Alton Bono, that would be enough. Judge Gould. Yes, thank you, Judge Oskam. I have a question of whether the government would accept a certain procedure. I'll just say preliminarily I think there are problems with this case if we affirm when the I.J. didn't have the proper legal standard before him for the reasons that Judge Fisher noted. But to me it also seems that there's a big problem in the case if we take her statements as true in the absence of an adverse credibility finding when the I.J. couldn't have understood the potential significance of what she was saying under now the current standard. So I want to ask would the government oppose if we were to remand so that the I.J. could consider the Ninth Circuit's subsequent precedence, but do it on an open record so that the government could introduce whatever evidence it wanted about any fact relevant under those precedence. If we can remand on an open record under SOTO and LARTE. Judge Gould, if the court were to remand, let me answer the back end of your question first. If the court were to remand, we would strongly urge that it be done on an open record. And we have to say that the facts will not get better for Ms. Guzman because the I.J. gave her the benefit of the doubt. But and I also have to admit that I've stood here before and said that, yes, you ought to remand a case where a precedent has come down that's affected a case the way the analysis of the case went. But generally, we don't remand cases, all cases involving an issue every time a new published precedent comes down. There needs to be some reason to doubt that the result would have been the same. And in this case, I don't think we will find in the immigration judge's analysis a statement that, well, she was in the car and knew of the plan, see Altamirano, and therefore she is responsible. In this case, the analysis did not parallel the Altamirano analysis. So we would oppose remand here, not because the idea of it is something we wouldn't go along with in the appropriate case, but because we wouldn't want all smuggling cases to be remanded unless the court really disagreed with our position. I understand that. And I appreciate your comments on just that. In light of these precedents, you know, one might argue that there's like a nice a nice legal issue is presented, whether if she loans the car for an innocent purpose originally, and then they convert it to an illicit purpose when they're in Tijuana, and then she omits to object if that's a sufficient affirmative act and a sufficient showing of intent to satisfy the standard. And that whole difficult issue might be might not be reached if the IJ made clear findings in light of those precedents. Your Honor, I understand completely. And I suppose my answer is that if the court disagrees with my evaluation, that this case clearly falls on the culpable side of the Altamirano analysis. Remand, if they disagree with that, then yes, remand and an open remand so that the rest of this evidence could be considered would be appropriate. And I'm willing to guess that you may see a case or two like that. But our position is this is not that case. Thank you very much, counsel. Your time has expired. The case just argued will be submitted for decision. And we will hear argument next in Valdovino, Corona v. Colton.
judges: O'scannlain, Fisher, Gould